# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **TRAVETTE VASSER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-00083** |
| | ) | **Judge Campbell / Frensley** |
| **SAARGUMMI TENNESSEE, LLC,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 10. In support of its Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 11), a Statement of Undisputed Material Facts (Docket No. 12), the Declarations of Emily Barbin and Beth Beech (Docket Nos. 12-1, 12-2), and excerpts from Plaintiff's Deposition (Docket No. 12-3).

Plaintiff has filed a Response with Exhibits but has not responded to Defendant's Statement of Undisputed Material Facts, nor has she filed her own Statement of Undisputed Material Facts. *See* Docket Nos. 15 - 15-2.

Defendant has filed a Reply. Docket No. 16.

Plaintiff filed this pro se, in forma pauperis action alleging race discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, et seq.; disability discrimination and failure to accommodate under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117; and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Docket No. 1.

1

Specifically, Plaintiff avers that, between April 2017 and July 2017, Defendant retaliated against her and wrongfully terminated her after she complained of discrimination by the production manager against her, her boss, the quality manager, the supervisor, and the quality technicians. *Id.* Plaintiff seeks "loss of pay from loosing [*sic*] job," "evicted from apartment," "late bill payments or behind," "loss of benefits," "terminated during sister's most critical battle of stage 4 colon cancer," "difficulties finding new job," "amount of damages unknown." *Id.*

Defendant filed the instant Motion for Summary Judgment and supporting materials arguing that there are no genuine issues as to any material fact and they are entitled to a judgment as a matter of law because: (1) Plaintiff cannot make a prima facie case for race or gender discrimination because she has presented no evidence that Defendant treated any other similarly situated employee more favorably than her; (2) Plaintiff cannot make a prima facie case for disability discrimination because she has presented no evidence that she is an individual with a disability under the ADA or that Defendant regarded her as disabled under the ADA; (3) Plaintiff cannot make a prima facie case for age discrimination under the ADEA because she has presented no evidence that Defendant either replaced her with a significantly younger employee or treated a similarly situated significantly younger employee more favorably; (4) Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for her termination (her well-documented poor performance) by showing that this adverse employment action was pretext; and (5) Plaintiff cannot make a prima facie case for failure to accommodate under the ADA because she presented no evidence that she was an individual with a disability while working for Defendant, nor has she presented evidence that she asked for a reasonable accommodation for an alleged disability. Docket Nos. 10, 11. Defendant notes that Plaintiff, in her deposition, admits that she was not discriminated against on the basis of her sex or age.

2

Docket No. 11. Defendant also notes that Plaintiff has failed to identify any similarly situated employees as comparators and Plaintiff admits that she was the only person in her position. *Id.* Defendant points out that Plaintiff's alleged protected activity happened while she was being disciplined for poor performance and had already received a documented warning that failure to improve her performance could lead to her termination. *Id.* Defendant maintains that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law on all counts such that the instant Motion should be granted. *Id.*

Plaintiff responds that she was made a "scapegoat" for Defendant's "production of bad defective non-conforming parts from the Production Department" and further responds that she inherited a "log jam of a Quality mess." Docket No. 15. Plaintiff argues that Defendant "has fabricated with malice the introduction of records of evidence on hire date, Human Resource records, emails, a Deposition . . . , Declarations, Refusal to answer Interrogatory Discovery Questions and incomplete answers." *Id.* Plaintiff argues that the emails and documents introduced as evidence by Defendant were actually intended for Emily Barbin and others in Production, Shipping and Materials, Sales and Accounting, and other departments. *Id.* Plaintiff maintains that the "record of evidence is complete with countless instances of Defendant's hostility and retaliation towards Plaintiff." *Id.* Plaintiff argues that there is direct and indirect evidence establishing her claims such that Defendant's Motion should be denied. *Id.*

Defendant replies that despite the Court's warning to Plaintiff that her "failure to respond to the motion and to statements of facts may result in the Court taking the facts alleged in the matter as true and granting the relief requested," and the Court's reminder to Plaintiff that she "may not just rely on the complaint," but "must show there is a material dispute of fact with citation to the record, affidavits, or other matter of evidence" in accordance with Fed. R. Civ. P.

3

56 and Local Rule 56.01; Plaintiff, in her Response, failed to identify a single genuine dispute of material fact sufficient to overcome Defendant's Motion. Docket No. 16, *citing* Docket Nos. 9, 15. Defendant also notes that Plaintiff has failed to respond to its Statement of Undisputed Material Facts, and has further failed to submit any sworn affidavits, depositions, or declarations in support of her claims. *Id.* Defendant argues that the nearly 700 pages of documents attached to Plaintiff's Response were not produced during discovery, nor were they produced in response to its subpoena, and Defendant notes that, despite attaching the documents to her Response, Plaintiff's Response "does not once cite to or quote any of them." *Id.* Defendant asserts that absent such citations, the Court is under no obligation to "sift through these 700 pages to determine whether, how, and why" they might be relevant to Plaintiff's claims, and Defendant maintains that the Court should decline to do so. *Id.* Defendant contends that because Plaintiff has not disputed any of its undisputed material facts or pointed to any admissible evidence to suggest that there are any genuine disputes regarding her claims, and because it is entitled to a judgment as a matter of law on all claims, the Court should grant its Motion. *Id.*

For the reasons below, the undersigned finds that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 10) be GRANTED, and that this action be DISMISSED.

## II. UNDISPUTED FACTS[1]

### A. Declaration of Emily Barbin

Emily Barbin was employed by Defendant as Quality Manager from March 22, 2017 to

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

November 1, 2017. Docket No. 12-1 ("Barbin Dec."), ¶ 2. As such, Ms. Barbin was familiar with the Employee Handbook and Safety Manual ("Handbook") and with Plaintiff's job duties as Quality Process Improvement Engineer ("Quality Engineer"). *Id.,* ¶¶ 3, 4. Plaintiff received a copy of Defendant's Employee Handbook and Safety Manual ("Handbook") when she was hired, and the Handbook expressly warns employees that unsatisfactory work performance could subject them to disciplinary action, up to and including termination of employment. *Id.,* ¶ 4, Exhibit A.

As a Quality Engineer, Plaintiff was the primary contact for customers such as Tesla and Webasto; she was responsible for ensuring the products customers received met their quality expectations. *Id.*, ¶ 5. When customers complained about a particular product failing to meet their quality expectations, Plaintiff was responsible for addressing the customer complaints. *Id.* Plaintiff would then prepare an "8D" report, which detailed the steps Defendant would take to remedy the problem; customers set the deadlines for completing these reports. *Id.* Plaintiff was expected to complete these reports and any other tasks in a timely manner. *Id.*

Ms. Barbin was Plaintiff's direct supervisor and was never satisfied with Plaintiff's job performance, so she worked with Plaintiff to improve it. *Id.*, ¶ 6. Plaintiff was unable or unwilling to adhere to Defendant's reasonable performance expectations. *Id.* With input from Human Resources Manager Beth Holt, Ms. Barbin tried to address Plaintiff's ongoing performance deficiencies with informal constructive feedback. *Id.* When these measures failed, Ms. Holt and Ms. Barbin issued Plaintiff a formal written warning on May 23, 2017. *Id.*, ¶ 7. The warning clearly stated that Ms. Holt and Ms. Barbin were dissatisfied with Plaintiff's work quality and quantity, and clearly stated that future violations would result in further disciplinary action, including termination of employment. *Id.*

Despite this warning, Ms. Barbin observed that Plaintiff's poor job performance did not improve. *Id.*, ¶ 8. Plaintiff continued to miss deadlines and cause unnecessary delays in Defendant's services. *Id.* Ms. Barbin observed that Plaintiff's poor job performance cost customers time and money. *Id.*, ¶ 9. On June 21, 2017, Plaintiff had amassed a backlog of forty-two (42) 8D quality assurance reports. *Id.* Two representatives from Tesla had to travel from California to Pulaski, Tennessee at their own expense to address this issue. *Id.* Even after these representatives arrived on site, Ms. Barbin was the person who completed most of the reports even though it was Plaintiff's responsibility. *Id.*

Ms. Barbin observed that Defendant lost customers because of Plaintiff's poor performance. *Id.*, ¶ 10. Plaintiff was primarily responsible for handling the customer Webasto. *Id.* On April 18, 2017, Webasto terminated its relationship with Defendant, effective immediately, citing quality problems and concerns with timeliness as the primary reasons for its decision. *Id.*

Numerous coworkers also complained to Ms. Barbin about Plaintiff's behavior at work. *Id.*, ¶ 11. Specifically, coworkers complained that Plaintiff yelled at them and acted in a disrespectful manner towards them. *Id.*

On June 23, 2017, Ms. Barbin again attempted to address Plaintiff's ongoing performance deficiencies with her during a meeting. *Id.*, ¶ 12. Plaintiff refused to take responsibility for her own actions. *Id.* Instead, Plaintiff told Ms. Barbin that she was being subjected to race discrimination and a hostile work environment. *Id.* This was the first time that Plaintiff had ever alleged discrimination or harassment based on her race, gender, or any other characteristic. *Id.* She offered no supporting evidence. *Id.*

Immediately after the conclusion of the June 23, 2017 meeting, Ms. Barbin observed

6

Plaintiff berating another employee on the shop floor without explanation. *Id.,* ¶ 13. The abuse was so extreme, Ms. Barbin observed Plaintiff being asked to leave the floor. *Id.* As a result of Plaintiff's actions on June 23, 2017, Ms. Holt and Ms. Barbin decided to place Plaintiff on administrative leave while they investigated the coworkers' and clients' allegations against Plaintiff and investigated Plaintiff's allegations of discrimination and harassment against Defendant. *Id.,* ¶ 14. During the investigation, neither Ms. Barbin nor her colleagues found any evidence of discriminatory or harassing treatment towards Plaintiff by anyone. *Id.,* ¶ 15. Plaintiff provided no additional evidence to support her allegations. *Id.*

Given Plaintiff's history of poor performance, Ms. Holt and Ms. Barbin concluded that Plaintiff's termination for poor job performance was appropriate under the circumstances. *Id.,*

¶ 16. Plaintiff had repeatedly failed to complete 8D reports despite much coaching and counseling from Ms. Holt and Ms. Barbin. *Id.* Plaintiff had accumulated a backlog of 42 8D reports for Tesla, which necessitated a site visit from Tesla representatives at their own expense. *Id.* Defendant lost Webasto as a client due to Plaintiff's untimeliness and disregard for quality. *Id.* Accordingly, Ms. Holt, with input from Ms. Barbin, terminated Plaintiff's employment on July 5, 2017. *Id.*

Ms. Barbin never discriminated against Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.,* ¶ 17. Ms. Barbin never witnessed any other person discriminating against Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.,* ¶ 18.

Ms. Barbin never harassed Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.,* ¶ 19. Ms. Barbin never witnessed any other person harassing Plaintiff

7

because of her age, sex, race, alleged disability, or for any reason. *Id.*, ¶ 20.

Ms. Barbin never treated Plaintiff differently than any other employee. *Id.*, ¶ 21. Ms. Barbin never witnessed any other person treating Plaintiff differently than any other employee. *Id.*, ¶ 22. Ms. Barbin never witnessed Plaintiff making any allegations about discrimination, harassment, or otherwise until after Defendant had initiated the disciplinary process against her. *Id.*, ¶ 23.

Ms. Barbin believes that "Plaintiff is using these allegations as a sword against legitimate disciplinary actions" and "to excuse the non-performance of her job duties." *Id.*, ¶ 24.

**B.   Declaration of Beth Beech[2]**

Beth Beech was employed by Defendant as Human Resources ("HR") Manager from February 2017 to September 2017. Docket No. 12-2 ("Beech Dec."), ¶ 2. As such, Ms. Beech was familiar with the Employee Handbook and Safety Manual ("Handbook") and with Plaintiff's job duties as Quality Process Improvement Engineer ("Quality Engineer"). *Id.,* ¶¶ 3, 4. Plaintiff received a copy of Defendant's Employee Handbook and Safety Manual ("Handbook") when she was hired, and the Handbook expressly warns employees that unsatisfactory work performance could subject them to disciplinary action, up to and including termination of employment. *Id.,* ¶ 4, Exhibit A.

As a Quality Engineer, Plaintiff was the primary contact for customers such as Tesla and Webasto; she was responsible for ensuring the products customers received met their quality expectations. *Id.*, ¶ 5. When customers complained about a particular product failing to meet their quality expectations, Plaintiff was responsible for addressing the customer complaints. *Id.*

---

[2] Ms. Holt and Ms. Beech are the same person; Holt is her prior last name, while Beech is her married last name.

Plaintiff would then prepare an "8D" report, which detailed the steps Defendant would take to remedy the problem; customers set the deadlines for completing these reports. *Id.* Plaintiff was expected to complete these reports and any other tasks in a timely manner. *Id.*

As HR Manager, Ms. Beech knows that Ms. Barbin was never satisfied with Plaintiff's poor job performance during the course of her employment. *Id.*, ¶ 6. Plaintiff was unable or unwilling to adhere to Defendant's reasonable performance expectations. *Id.* With Ms. Barbin, Ms. Beech tried to address Plaintiff's ongoing performance deficiencies with informal constructive feedback. *Id.* When these informal measures failed, Ms. Beech and Ms. Barbin issued Plaintiff a formal written warning on May 23, 2017. *Id.*, ¶ 9. The warning clearly stated that Ms. Beech and Ms. Barbin were dissatisfied with Plaintiff's work quality and quantity, and clearly stated that future violations would result in further disciplinary action, including termination of employment. *Id.*

Despite this warning, Ms. Beech observed that Plaintiff's poor job performance did not improve. *Id.*, ¶ 10. Plaintiff continued to miss deadlines and cause unnecessary delays in Defendant's services. *Id.* Ms. Beech observed that Plaintiff's poor job performance cost customers time and money. *Id.*, ¶ 11. On June 21, 2017, two representatives from Tesla had to travel from California to Pulaski, Tennessee at their own expense because Plaintiff had amassed a backlog of forty-two (42) 8D quality assurance reports. *Id.* Even after these representatives arrived on site, Ms. Barbin was the person who completed most of the reports even though it was Plaintiff's responsibility. *Id.*

Ms. Beech observed that Defendant lost customers because of Plaintiff's poor performance. *Id.*, ¶ 12. Plaintiff was primarily responsible for handling the customer Webasto. *Id.* On April 18, 2017, Webasto terminated its relationship with Defendant, effective

immediately, citing quality problems and concerns with timeliness as the primary reasons for its decision. *Id.*

Numerous coworkers also complained to Ms. Barbin about Plaintiff's behavior at work. *Id.*, ¶ 13. Specifically, coworkers complained that Plaintiff yelled at them and acted in a disrespectful manner towards them. *Id.*

On June 23, 2017, Ms. Beech was present during a meeting in which Ms. Barbin again attempted to address Plaintiff's ongoing performance deficiencies with her. *Id.*, ¶ 14. Plaintiff refused to take responsibility for her own actions, stating "White people don't like me because I'm black and black people don't like me because I'm an educated black woman." *Id.* Instead, Plaintiff told Ms. Barbin that she was being subjected to race discrimination and a hostile work environment. *Id.* This was the first time that Plaintiff had ever alleged discrimination or harassment based on her race, gender, or any other characteristic. *Id.* She offered no supporting evidence. *Id.*

Immediately after the conclusion of the June 23, 2017 meeting, Ms. Beech observed Plaintiff berating another employee on the shop floor without explanation. *Id., ¶ 15.* The abuse was so extreme, Ms. Beech observed Plaintiff being asked to leave the floor. *Id.* As a result of Plaintiff's actions on June 23, 2017, Ms. Beech and Ms. Barbin decided to place Plaintiff on administrative leave while they investigated the coworkers' and clients' allegations against Plaintiff and investigated Plaintiff's allegations of discrimination and harassment against Defendant. *Id.*, ¶ 16. During the investigation, neither Ms. Beech nor her colleagues found any evidence of discriminatory or harassing treatment towards Plaintiff by anyone. *Id.*, ¶ 17. Plaintiff provided no additional evidence to support her allegations. *Id.*

Given Plaintiff's history of poor performance, Ms. Beech and Ms. Barbin concluded that

10

Plaintiff's termination for poor job performance was appropriate under the circumstances. *Id.*,

¶ 18. Plaintiff had repeatedly failed to complete 8D reports despite much coaching and counseling from Ms. Beech and Ms. Barbin. *Id.* Plaintiff had accumulated a backlog of 42 8D reports for Tesla, which necessitated a site visit from Tesla representatives at their own expense. *Id.* Defendant lost Webasto as a client due to Plaintiff's untimeliness and disregard for quality. *Id.* Accordingly, Ms. Beech, with input from Ms. Barbin, terminated Plaintiff's employment on July 5, 2017. *Id.*

As HR Manager, Ms. Beech was never aware that Plaintiff had any ADA-qualifying disabilities; she did not have a physical or mental impairment that substantially limited one or more of her major life activities, such as caring for herself, performing tasks, walking, seeing, hearing, breathing, learning, and working. *Id.*, ¶ 7. Plaintiff never asked for an ADA accommodation during the course of her employment for any alleged disability. *Id.*, ¶ 8.

Ms. Beech never discriminated against Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.*, ¶ 19. Ms. Beech never witnessed any other person discriminating against Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.*, ¶ 20.

Ms. Beech never harassed Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.*, ¶ 21. Ms. Beech never witnessed any other person harassing Plaintiff because of her age, sex, race, alleged disability, or for any reason. *Id.*, ¶ 22.

Ms. Beech never treated Plaintiff differently than any other employee. *Id.*, ¶ 24. Ms. Beech never witnessed any other person treating Plaintiff differently than any other employee. *Id.*, ¶ 25.

At no point during her work as HR Manager, including all interactions with Plaintiff, did

Ms. Beech allow her relationship with Tommy Beech affect her job performance or judgment. *Id.,* ¶ 23.

Ms. Beech never witnessed Plaintiff making any allegations about discrimination, harassment, or otherwise until after Defendant had initiated the disciplinary process against her. *Id.*, ¶ 26. Ms. Beech believes that "Plaintiff is using these allegations as a sword against legitimate disciplinary actions" and "to excuse the non-performance of her job duties." *Id.*, ¶ 27.

## C. Excerpts from Plaintiff's Deposition

Defendant hired Plaintiff as a Quality Process Improvement Engineer on February 6, 2017. Deposition of Travette Vasser ("Plaintiff's Dep."), p. 21. As a Quality Engineer, Plaintiff was the primary contact for customers such as Tesla and Webasto; she was responsible for ensuring the products customers received met their quality expectations. *Id.*, p. 57. When customers complained about a particular product failing to meet their quality expectations, Plaintiff was responsible for addressing the customer complaints. *Id.*, p. 75. Plaintiff would then prepare an "8D" report, which detailed the steps Defendant would take to remedy the problem; customers set the deadlines for completing these reports. *Id.* Plaintiff was expected to complete these reports and any other tasks in a timely manner. *Id.*

Dawn Buchanan was Plaintiff's supervisor from February 6, 2017 to March 21, 2017 and Emily Barbin was Plaintiff's supervisor from March 21, 2017 to Plaintiff's termination on July 5, 2017. *Id.*, p. 42.

On May 23, 2017, Plaintiff was instructed through email and verbally to complete a request by Defendant's German sister plant and it was communicated that this task was her top priority to complete before she left for the day. *Id.*, pp. 82-83, 88. Plaintiff did not do so, and

12

as a result, the sister plant was forced to produce parts without much needed feedback. *Id.*

Ms. Beech and Ms. Barbin therefore issued Plaintiff a formal written warning on May 23, 2017.

*Id*., pp. 81, 94-96. The warning clearly stated that Ms. Beech and Ms. Barbin were dissatisfied with Plaintiff's work quality and quantity, and clearly stated that future violations would result in further disciplinary action, including termination of employment. *Id.*

In her Deposition, Plaintiff refused to provide any specific details, descriptions, or the general nature of any alleged comments made by Ms. Barbin, Tommy Beech, Ms. Beech, or anyone else against her. *Id.*, pp. 114-15, 121-22.

Plaintiff admits she has no direct or indirect evidence for age discrimination by anyone at Defendant's workplace. *Id.*, p. 148. Plaintiff admits that no one at Defendant's workplace made any age-related comments toward her. *Id.*

Plaintiff admits she has no direct or indirect evidence for gender discrimination by anyone at Defendant's workplace. *Id.*, p. 66. She admits that no one at Defendant's workplace made any discriminatory comments to her based on her gender. *Id.*

Plaintiff admits that there were no other employees in her same position of Quality Process Improvement Engineer. *Id.*, p. 37.

Plaintiff admits that she has no direct evidence of race discrimination towards her. *Id.*, pp. 7-73.

### III. APPLICABLE LAW AND ANALYSIS

#### A.  Local Rules 56.01(c) and (g)

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c.  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...

13

> g.    Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

### B.  Summary Judgment Standards

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond to its Statement of Undisputed Material Facts. *See Stough v. Mayville Community Schools*, 138 F. 3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such

14

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.*, 187 F. 3d 533, 537-38 (6th Cir. 1999).

**C.   Title VII of the Civil Rights Act of 1964**

**1.   Generally**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and

provides, in part:

It shall be an unlawful employment practice for an employer--

1.    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

2.    to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge, or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F. 3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F. 2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F. 2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F. 2d 455, 465-66 (5th Cir. 1970)*; King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968)).

16

## 2.  Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1.      she is a member of a protected class;

2.      she was qualified for her job and performed it satisfactorily;

3.      despite her qualifications and performance, she suffered an adverse employment action;[3] and

4.       that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997).  "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."  *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated her because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination.  *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*,

29 F. 3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F. 3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 3.   Prima Facie Claim of Retaliation

An employer may not retaliate against an employee because he has opposed an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any

---

[3] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of

18

manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A prima facie

case of retaliation requires a plaintiff to demonstrate that:

1.  she engaged in a protected activity;

2.  the defendant knew that the plaintiff was exercising protected rights;

3.  the plaintiff suffered an adverse employment action or was subjected to severe or
pervasive retaliatory harassment by a supervisor; and

4.  there was a causal connection between the protected activity and the adverse
employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F. 3d 357, 363 (6th Cir. 2001); *Morris v.*

*Oldham Co. Fiscal Court*, 201 F. 3d 784, 792 (6th Cir. 2000).

Retaliation claims are evaluated under the *McDonnell Douglas-Burdine* tripartite test

discussed above. *EEOC v. Avery Dennison Corp.,* 104 F. 3d 858, 862 (6th Cir. 1997).

## D.   Americans with Disabilities Act of 1990

The Americans with Disabilities Act ("ADA") protects employees from discrimination

based on their disabilities. In order to prevail on a claim of unlawful employment

discrimination under the ADA, a plaintiff must demonstrate that:

1.  she is, or was perceived as, an individual with a disability;

2.  she is otherwise qualified to perform the job requirements either:

(a) with or without a reasonable accommodation from the employer, or

(b) with an alleged "essential" job requirement eliminated; and

3.  she suffered an adverse employment action "because of" her disability.

*Monette v. Electronic Data Sys. Corp.,* 90 F. 3d 1173, 1178 (6th Cir. 1996). *See also* 42

U.S.C. §§ 12111 and 12112.

---

benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F. 3d 876, 885-86 (6th Cir. 1996).

### E.   Age Discrimination in Employment Act

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to:

1.  to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

2.  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

3.  to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623.

A prima facie case of age discrimination under the ADEA requires the plaintiff to demonstrate that he or she:

1.  is a member of a protected class (i.e. was at least forty (40) years of age at the time of the alleged discrimination);

2.   is qualified for the position;

3.  suffered an adverse employment action; and

4.  was treated differently than, or replaced by, a younger, similarly situated person outside of the protected class.

*Policastro v. Northwest Airlines, Inc.*,   297 F. 3d 535, 538-539 (6th Cir. 2002), *citing Kline*, 128 F. 3d at 349.

Age discrimination claims brought pursuant to the ADEA are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above.  *Wexler*,   317 F. 3d at 574, *citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 350 (6th Cir. 1998).

20

### F. The Case At Bar

As discussed above, a prima facie case of age discrimination under the ADEA requires Plaintiff to establish that: (1) she is a member of a protected class (i.e. was at least forty (40) years of age at the time of the alleged discrimination); (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated differently than, or replaced by, a younger, similarly situated person outside of the protected class. *Policastro, supra*. Plaintiff admits she has no direct or indirect evidence for age discrimination by anyone at Defendant's workplace. Plaintiff's Dep., p. 148. Plaintiff further admits that no one at Defendant's workplace made any age-related comments toward her. *Id.* Moreover, it is undisputed that neither Ms. Beech nor Ms. Barbin treated Plaintiff differently than any other employee, nor did they witness any other person treating Plaintiff differently than any other employee. Beech Dec., ¶¶ 24, 25; Barbin Dec., ¶¶ 21, 22. Accordingly, Plaintiff cannot establish a prima facie case of age discrimination under the ADEA and Defendant is entitled to a judgment as a matter of law on this claim.

With regard to her claim under the ADA, as discussed above, in order to prevail on a claim of unlawful employment discrimination under the ADA, Plaintiff must demonstrate that: (1) she is, or was perceived as, an individual with a disability; (2) she is otherwise qualified to perform the job requirements either: (a) with or without a reasonable accommodation from the employer, or (b) with an alleged "essential" job requirement eliminated; and (3) she suffered an adverse employment action "because of" her disability. *Monette*, *supra*. In the case at bar, it is undisputed that, as HR Manager, Ms. Beech was never aware that Plaintiff had any ADA-qualifying disabilities; she did not have a physical or mental impairment that substantially limited one or more of her major life activities, such as caring for herself, performing tasks,

walking, seeing, hearing, breathing, learning, and working. Beech Dec., ¶ 7. It is further undisputed that Plaintiff never asked for an ADA accommodation during the course of her employment for any alleged disability. *Id.*, ¶ 8. Accordingly, Plaintiff cannot establish a prima facie case of disability discrimination or failure to accommodate under the ADA and Defendant is entitled to a judgment as a matter of law on this claim.

Turning to Plaintiff's claims for race and gender discrimination under Title VII, as discussed above, in order to establish a prima facie case of discrimination in violation of Title VII, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for her job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action;[4] and (4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson, supra.* In the case at bar, Plaintiff admits that she has no direct evidence of race discrimination towards her. Plaintiff's Dep., p. 7-73. Additionally, Plaintiff admits she has no direct or indirect evidence for gender discrimination by anyone at Defendant's workplace, and she admits that no one at Defendant's workplace made any discriminatory comments to her based on her gender. *Id.*, p. 66. Plaintiff also admits that there were no other employees in her same position of Quality Process Improvement Engineer. *Id.*, p. 37. Moreover, it is undisputed that Plaintiff had a history of poor performance, repeatedly failing to complete 8D reports despite much coaching and counseling from Ms. Beech and Ms. Barbin. Beech Dec., ¶ 18; Barbin Dec., ¶ 16. Plaintiff had accumulated a backlog of 42 8D reports for

---

[4] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F. 3d 876, 885-86 (6th Cir. 1996).

22

Tesla, which necessitated a site visit from Tesla representatives at their own expense. *Id.* Defendant lost Webasto as a client due to Plaintiff's untimeliness and disregard for quality. *Id.* Accordingly, after a failure to improve despite warnings, Ms. Beech, with input from Ms. Barbin, terminated Plaintiff's employment on July 5, 2017. *Id.*

Additionally, it is undisputed that neither Ms. Beech nor Ms. Barbin discriminated against Plaintiff because of her age, sex, race, alleged disability, or for any reason, nor did they witness any other person discriminating against Plaintiff because of her age, sex, race, alleged disability, or for any reason. Beech Dec., ¶¶ 19, 20; Barbin Dec., ¶¶ 17, 18. It is further undisputed that neither Ms. Beech nor Ms. Barbin harassed Plaintiff because of her age, sex, race, alleged disability, or for any reason, nor did they witness any other person harassing Plaintiff because of her age, sex, race, alleged disability, or for any reason. Beech Dec., ¶¶ 21, 22; Barbin Dec., ¶¶ 19, 20. Accordingly, Plaintiff cannot establish her claims under Title VII and Defendant is entitled to a judgment as a matter of law on these claims.

## VI. CONCLUSION

For the foregoing reasons, the undersigned finds that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law on all claims presented. The undersigned therefore recommends that Defendant Motion for Summary Judgment (Docket No. 10) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**